[No. 16208. Department One. April 20, 1921.]

A. T. HASTINGS, *as Receiver etc., Respondent*, v.
LINCOLN TRUST COMPANY, *Appellant.*[1]

RECEIVERS (74)—ACTIONS — RIGHT OF ACTION BY RECEIVERS — CLAIMS ON BEHALF OF CREDITORS. A receiver of an insolvent debtor was entitled to the possession of an automobile, stored by the debtor with a warehouse company upon which it had issued its receipt reciting that it would deliver same to the debtor "or order, at our warehouse, as and when directed upon the surrender of this receipt properly endorsed", notwithstanding an attempted pledge of the car by delivery of the warehouse receipt without indorsement to the pledgee; since such transfer of the receipt was not sufficient in itself to constitute a delivery of possession as against the right of the receiver to administer the property of the insolvent.

PLEDGES (3)—VALIDITY—DELIVERY AND POSSESSION—UNINDORSED WAREHOUSE RECEIPT. Delivery of pledged property by the pledgor to the pledgee is absolutely necessary to the life of the contemplated pledge; and, while actual physical movement of the property from the hands of one to the other may not be necessary, delivery of possession must be of such nature that the control and dominion over the property passes from the pledgor into the absolute control and dominion of the pledgee.

[1]Reported in 197 Pac. 627.

WAREHOUSEMEN (3)—RECEIPTS—NEGOTIABILITY AND TRANSFER—
EFFECT OF DELIVERY WITHOUT INDORSEMENT. Under the provisions
of Rem. Code, § 3369, to the effect that a warehouse receipt can be
transferred only by indorsement, mere delivery of an unindorsed
warehouse receipt to a pledgee would not constitute delivery of
possession of the goods, as against a receiver claiming right of
possession for the benefit of creditors.

Appeal from a judgment of the superior court for
Spokane county, Hurn, J., entered April 12, 1920, upon
findings in favor of the plaintiff, in an action of trover
and conversion, tried to the court. Affirmed.

*McCarthy & Edge* and *Geo. D. Lantz,* for appellant.
*E. B. Quackenbush,* for respondent.

PARKER, C. J.—The plaintiff, Hastings, as receiver
of Ross & Skinner, an insolvent partnership, sought
recovery in the superior court for Spokane county from
the defendant trust company the value of several auto-
mobiles which he alleged it wrongfully obtained the
possession of and sold and converted the proceeds
thereof to its own use; the automobiles being at the
time a portion of the trust property of the receiver-
ship in his hands for the benefit of the creditors of
Ross & Skinner. Trial upon the merits before the
court sitting with a jury resulted in verdict and judg-
ment awarding to the plaintiff recovery against the
defendant in the sum of $1,050, the value of one of
the automobiles in question. From this disposition of
the cause in the superior court, the defendant has ap-
pealed to this court.

There is, we think, no substantial ground for contro-
versy over the facts determinative of the rights of the
parties to this cause. They may be summarized as
follows: On May 21, 1918, Ross & Skinner were in-
debted to appellant trust company for sums then and
theretofore loaned by it to them, aggregating several

thousand dollars. On that day Ross & Skinner placed on storage in the warehouse of the McAllister Warehouse Company the automobile in question; which storage was evidenced by the warehouse company issuing and delivering to them its warehouse receipt, which, in so far as we need here notice its terms, reads as follows:

"Commercial Warehouse Receipt
"Spokane, Wash., May 21, 1918.
"This is to certify that we have received and hold on storage (1) one Elgin Auto No. 175386 and *will deliver the same to Ross & Skinner or order, at our warehouse, as and when directed, upon the surrender of this receipt, properly endorsed,* and on payment of charges and advances.

"McAllister Warehouse Co.
"By J. H. McAllister."

We have italicized the words of this receipt which call for particular notice. Looking to partially securing the indebtedness then owing by Ross & Skinner to appellant, they delivered this warehouse receipt to appellant, but without any indorsement or other written evidence of their assignment of it to appellant. Thereafter, on June 17, 1918, respondent was, by the superior court for Spokane county, duly appointed receiver of Ross & Skinner because of their insolvency, for the purpose of winding up their business and subjecting their property to the payment of their creditors. At that time the automobile in question remained on storage in the McAllister warehouse—the warehouse receipt therefor being still in the possession of appellant—and more than $1,050 of the indebtedness owing by Ross & Skinner to appellant remained unpaid. Thereafter, in September, 1918, these conditions as to the possession of the automobile remaining unchanged and the indebtedness owing by Ross & Skinner to appel-

lant still exceeding $1,050, appellant induced the warehouse company to deliver to it the automobile upon surrender of the warehouse receipt therefor, which receipt had not been indorsed or otherwise assigned in writing by Ross & Skinner to appellant. Thereafter appellant sold the automobile for the sum of $1,050 and applied that sum in part payment upon the indebtedness owing to it by Ross & Skinner. The evidence fully warranted the jury in concluding that the $1,050 received by appellant from the sale of the automobile was its fair value.

The principal claims of error here made in behalf of appellant, the correct disposition of which we think will become decisive of this whole case, are in substance; that the trial court erred in refusing to withdraw from the consideration of the jury and decide, as a matter of law, that there was, by virtue of the delivery of the warehouse receipt by Ross & Skinner to appellant, a constructive or symbolic delivery of the automobile to appellant, such as would in law support a pledge of the automobile as security for the indebtedness owing by Ross & Skinner to appellant; and that the trial court erred in giving to the jury instructions which, it is claimed and may be conceded, told the jury in substance that the mere delivery of the warehouse receipt by Ross & Skinner to appellant did not in law constitute a delivery of the possession of the automobile to appellant; thus in effect deciding, as a matter of law, that there was no such delivery of the possession of the automobile as would support a pledge as security for the indebtedness owing by Ross & Skinner to appellant, and resulting in leaving to the jury only the question of the value of the automobile as respondent's measure of recovery from appellant.

Now it may be that the mere delivery of the ware-

house receipt by Ross & Skinner to appellant, accompanied by an agreement between them that the automobile should be thereby considered as pledged to appellant as security, did have the effect of creating such an inchoate equitable lien upon the automobile in favor of appellant as could in equity be perfected and enforced as between them. But conceding that to be the effect of such delivery of the warehouse receipt, the question here to be decided would, we think, still remain unanswered.

Counsel for appellant invoke at the outset what they conceive to be the general rule that a receiver, assignee, or other trustee of an insolvent concern, appointed for the purpose of winding up its affairs and subjecting its property to the payment of its creditors, stands in the shoes of such concern and possesses no rights with respect to the trust property superior to those which would be possessed by such concern were it a going concern acting for itself. This may be conceded to be a general rule of law applicable to many controversies which may arise in the settlement of such a trust, but it is, we think, not a controlling rule of law which can be successfully invoked as against the rights of creditors of an insolvent concern represented by such a receiver or trustee, when it comes to deciding the question of whether or not a mortgage, pledge or other lien against the property of the insolvent in favor of one of its creditors has been perfected in the manner required by law before insolvency and the passing of the property and affairs of the insolvent into the hands of such a receiver or trustee.

Our decision in *Keyes v. Sabin,* 101 Wash. 618, 172 Pac. 835, is, we think, a holding in substance, that a lien in favor of a creditor of an insolvent, in order to become effective as against the creditors of such con-

cern represented by a receiver or other trustee, must
be a lien perfected as the law requires prior to the time
of the passing of the insolvent's property and affairs
into the hands of such receiver or trustee for the bene-
fit of creditors. In that case there was involved the
validity of an unrecorded chattel mortgage, the mort-
gagors having, after execution of the mortgage, made
a common law assignment of their property to one
Sabin for the benefit of their creditors, the mortgage
not being recorded until after the making of such as-
signment and the taking of the possession of the prop-
erty by the assignee. Holding that the mortgage was
void as against the assignee as the representative of
the creditors, Judge Fullerton, speaking for the court,
said:

"It is argued that the assignee takes only such title
as the assignor had, and as the mortgage was good
as between the mortgagors and the mortgagee, it is
good as between the assignee and the mortgagee. But
we cannot think the relation here assumed correctly
represents the assignee's position. It is true, unques-
tionably, that if there was a valid and subsisting lien
on the property assigned, good as against all the
world, or if the title to any of the property was de-
fective in the assignors, the assignee would take the
property subject to such lien or defect. But it does
not follow that he takes the property subject to all
inchoate or imperfect liens, invalid as to certain per-
sons although valid as between the parties thereto.
The assignee holds the property in trust for certain
designated persons; in this instance, the creditors of
the assignors. In his individual right he acquired
nothing by the assignment. He is but the mediary
through whom the title to the assigned property was
conveyed to creditors. If, therefore, these creditors,
the actual beneficiaries of the assignment, could have
acquired a valid title against any inchoate or imper-
fect lien upon the property by an assignment made
directly to them, they can acquire such a right by an

assignment made to another for their benefit. It cannot be doubted, we think, that, if the assignment had been made directly to the creditors, and the mortgage the appellant seeks to assert is invalid as against them, they could assert its invalidity in any suit against them brought to enforce the mortgage. If they could do this in their individual capacities, there is no reason why they cannot do it through their representative."

It is true that mention is made in that decision, following the above quoted language, of the fact that the assignee took full legal title to the property by the assignment for the benefit of creditors, as furnishing a possible distinction between that decision and certain of our former decisions which seemed somewhat out of harmony with the views expressed in the above quoted portion of that decision. Further reflection, however, leads us to conclude that the above quoted portion of that decision states a correct view of the law applicable to our present inquiry. It seems to us to be of little or no consequence whether we regard the technical legal title to the property as passing to an assignee by formal voluntary assignment for the benefit of creditors of the assignor, or control and dominion over the property passing to a receiver or other trustee for the benefit of creditors of its owner by virtue of an order of a court of competent jurisdiction. The owner is as completely divested of control and dominion over the property in the one case as in the other, and the creditors as beneficiaries acquire the same rights, no more, no less, to have the trust property administered to the end that they be paid from the proceeds thereof in the one case as in the other. A critical reading of our decision in *Keyes v. Sabin, supra,* will, we think, disclose that it was, in its last analysis, rested upon the invalidity of the chattel

mortgage as to creditors of the assignee, though good as between the parties, because of the want of its timely recording as required by Rem. Code, § 3660, which makes chattel mortgages "void as against all creditors of the mortgagor, both existing and subsequent, whether or not they have or claim a lien upon such property, . . ." The holding in that case, it seems to us, means that an inchoate lien as to creditors of the owner of the property, whether sought to be created by mortgage, pledge or in any other manner recognized by law, becomes void and of no effect insofar as the rights of the creditors of the owner of the property are concerned, not only upon the passing of the property into the hands of an assignee under a voluntary assignment made by the owner for the benefit of his creditors, but also upon the passing of the property and affairs of the owner, because of insolvency, into the hands of a receiver or other trustee, lawfully appointed by a court of competent jurisdiction, for the benefit of creditors.

It is elementary law that the delivery of pledged property by the pledgor to the pledgee is absolutely necessary to the life of the contemplated pledge. It is well said in *Security Warehousing Co. v. Hand,* 143 Fed. 32 (41):

"Delivery of possession is the very life of a pledge. No mere agreements respecting possession can create it. The contract of pledge cannot exist outside of the fact of change of possession." 21 R. C. L. 643.

It is of course not necessary, under all circumstances, that the delivery be an actual physical movement of the property from the hands or control of the pledgor to the pledgee; but it must in any event be of such nature that the control and dominion over the property passes from the pledgor into the absolute

control and dominion of the pledgee. Did such possession of this automobile pass from Ross & Skinner to appellant? Now the real question here is not, whether there was such agreement between, or acts on the part of, Ross & Skinner and appellant as would in equity enable appellant to compel the perfection of an inchoate unperfected pledge; but, in principle, as in *Keyes v. Sabin,* above quoted from, the real question here is, whether or not there was such a *delivery of the possession of the automobile* by Ross & Skinner to appellant, effected by the delivery of the unindorsed warehouse receipt, as in law perfected the contemplated pledge as against the respondent receiver representing the creditors of Ross & Skinner. In other words, the question is, not what claimed rights of appellant could be enforced as against Ross & Skinner, but whether or not there was *delivery of possession of the automobile by Ross & Skinner to appellant;* for, until such a delivery be made there could be no legal pledge.

Indeed, in our present inquiry we can ignore the question of transfer of title by the mere delivery of an unindorsed warehouse receipt such as the one here in question. A mere delivery of such a receipt might be held to transfer the title to the property for which it was issued, accompanied by an agreement to that effect, and still not have the effect of *transferring the possession of the property.* Possession of this automobile is of the very essence of this controversy, and when we decide who had possession of it as between appellant and respondent we will have decided this case.

Recurring to the language of the warehouse receipt, we read that the warehouse company "will deliver the same to Ross & Skinner or order, at our warehouse, as

and when directed, upon the surrender of this receipt, properly endorsed, . . ." This language of the warehouse receipt all but conclusively shows that one to whom it may be delivered without indorsement or written assignment would not be entitled to receive possession of the automobile from the warehouse company. Such a holder manifestly could not enforce the delivery of the automobile to him by the warehouse company. How, then, can it be said that such a holder of this warehouse receipt acquires constructive, symbolic or any other form of possession of the automobile in the sense that the possession of the warehouse company is his possession? Manifestly the warehouse company does not become the servant of such a holder of the warehouse receipt so that its possession becomes his possession;; but the warehouse company remains the servant of the one to whom the receipt is issued—in this case, Ross & Skinner—as long as the warehouse receipt remains unindorsed and untransferred in some form of writing as required by its terms. These considerations, it seems. to us, leave no escape from the conclusion that the possession of this automobile by the warehouse company at all times remained in Ross & Skinner, and, in turn, in the receiver of their property and affairs, until it was wrongfully taken possession and disposed of by appellant.

It may be, because of the negotiable character of this warehouse receipt, in the light of the provisions of our statute relating to warehouse receipts, that, had appellant, even after the appointment of respondent as receiver, procured the indorsement upon it of Ross & Skinner and then presented it to the warehouse company and demanded possession of the automobile, offering to surrender the receipt so indorsed, the ware-

house company would have freed itself from all liability by surrendering the possession of the automobile to appellant. But that is not this case. We are not here concerned with the question of how the warehouse company might have been freed from liability by the doing of something on its part strictly in keeping with the terms and negotiable character of the receipt. This is an action wherein recovery is sought from appellant because of its wrongful act in acquiring possession of this automobile at a time when it had no legal right to the possession of the automobile either as against the warehouse company or respondent as receiver representing the creditors of Ross & Skinner.

Our statute relating to bills of lading and warehouse receipts (Rem. Code, § 3369) furnishes abundant ground for arguing that a warehouse receipt in the form of the one here in question can be transferred only by indorsement. Counsel for appellant, however, cite authority supporting the view that similar statutes relative to the transfer of warehouse receipts do not prevent valid transfers thereof by methods recognized as effectual in the absence of statute. If we were here confronted with the sole question of the transfer of the title to this automobile as between Ross & Skinner and appellant, it would probably be necessary to enter upon an inquiry as to whether or not transfer by indorsement of such a warehouse receipt is, because of the statute, an exclusive method of transferring such a receipt and the title to the property therein described. But, as we have seen, we have here a question of the transfer of the possession of this automobile; and we think the very terms of the warehouse receipt answer in the negative the question of whether or not the mere delivery of such an unindorsed warehouse

receipt constitutes delivery of possession of the automobile.

The judgment is affirmed.

HOLCOMB, BRIDGES, and MACKINTOSH, JJ., concur.