## 11190

### IN RE. AMERICAN SLICING MACHINE CO.
### LIPSCOMB-RUSSELL CO. v. HOBBS-HENDERSON CO.

#### (118 S. E., 303)

1. CORPORATIONS—RIGHTS AND DUTIES OF "RECEIVER" OUTLINED.—A receiver of an insolvent corporation is an officer appointed by the court to preserve the property in ligation, together with the profits thereon, and to apply them at the direction of the court. He represents, not only the corporation, but also its stockholders and creditors, and it is his duty to assert and protect the rights of each of these persons.

2. RECEIVERS—HAVE NO GREATER INTEREST THAN INSOLVENT POSSESSED.—The appointment by the court can vest in the receiver no greater interest than the insolvent possessed; a receiver is not a creditor or a purchaser.

3. RECEIVERS—CONDITIONAL VENDEE ENTITLED TO PRIORITY AS TO PRIOR CREDITORS ONLY, CONTRACT NOT BEING RECORDED.—Where a condi-

---

NOTE: For conditional sale contract executed prior to, but filed within the four months period as a voidable preference see notes in 47 L. R. A. (N. S.), 1223 and 22 L. R. A. (N. S.), 1378.

tional sale contract was not recorded within the time required by Civ. Code 1912, § 3542, and until receiver for conditional vendee was appointed, conditional vendor is entitled to priority as to those who were creditors prior to the execution of the conditional sale, but is not entitled to priority as to subsequent creditors.

4. RECEIVERS—LIEN CREDITORS NOT CONSENTING TO SALE NOT CHARGEABLE WITH LOSS DUE TO ASSETS NOT BRINGING THEIR VALUE.—Where a receiver and his purchaser had notice before the sale of claimant's lien, and claimant took no part in the consent order or sale, claimant is not chargeable with any loss due to the assets not bringing their full value.

Before MAULDIN, J., Pickens, July, 1922. Reversed and remanded.

Creditor's bill by the Lipscomb-Russell Company against the Hobbs-Henderson Company, in which J. P. Abernathy was appointed receiver. From a decree denying priority to the claim of the American Slicing Machine Company. it appeals. Reversed and remanded, with directions.

*Messrs. Carey & Carey,* for American Slicing Machine Company, appellant, cite: *Conditional sale contract valid between original parties is valid against Receiver:* Ann. Cas. 1916-A, 1258; 134 Fed., 924; 150 Pac., 241; 141 N. Y., 603; 16 Ann. Cas., 133; 129 A. S. R., 747; 23 L. R. A. (N. S.), 1074; 112 Pac., 1109; 17 S. E., 1012. *Receiver took stock as he found it not as an innocent purchaser:* 23 R. C. L., 56, Sec. 60; 146 U. S., 499; 34 Cyc., 348, 193, 191.

*Mr. Stephen Nettles,* for J. B. Abernathy, Receiver, Respondent, cites: *Recording of contract after appointment of Receiver without legal effect:* 9 S. C., 318; 30 S. C., 192; 60 S. C., 306; 34 Cyc., 199. *Rights and duties of Receiver:* 174 U. S., 182; 197 Pac., 627; 39 Atl., 163; 107 C. C. A., 158; 24 R. C. L., 470; L. R. A., 1917–C, 442. *Secret liens null and void:* 21 S. C., 212; 27 S. C., 471; 78 S. C., 294; 79 S. C., 279; 109 S. C., 312.

June 27, 1923.

The opinion of the Court was delivered by Mr. Justice Cothran.

The appellant, American Slicing Machine Company, held a claim against Hobbs-Henderson Company, based upon the sale of one of its machines, under a contract retaining title. The contract was not recorded within 10 days, and not until after a Receiver had been appointed. The Circuit decree allowed the appellant no priority over either prior or subsequent creditors, in the assets in the hands of the Receiver, and the machine company has appealed.

It appears that on February 7, 1922, at the instance of creditors, Hobbs-Henderson Company, a corporation, was placed in the hands of a Receiver, by order of Hon. Frank B. Gary, Circuit Judge, upon the ground of insolvency; on March 31, 1922, Hon. T. J. Mauldin, Circuit Court, passed an order directing the Receiver to sell the assets of the corporation for a certain cash price, and providing that they should be sold free of all incumbrances, the lien or other rights of creditors being transferred to the purchase money received; the sale was completed on the same day and the purchase price, $6,000.00, in cash, paid to the Receiver; thereafter the American Slicing Machine Company filed a claim with the Special Master, claiming the possession of a certain machine sold to the insolvent, or the sum of $290.00, the balance due under the contract of sale reserving title.

The claim arose under the following circumstances: In October 13, 1921, the slicing machine company entered into a contract with the corporation for the sale of a slicing machine which was delivered and installed by the corporation in its place of business; the contract fixed the terms of payment, on credit, and reserved title until the price should be paid in full; it was not recorded until March 30, 1922, after the appointment of the Receiver, and on the

day before the order of sale of the assets was passed by Judge Mauldin. The machine was included in the assets sold on March 31, 1922, under that order.

It appears that the corporation was insolvent; that the majority of the claims filed with the Special Master were for debts contracted before the date of the slicing machine contract; that the claims which arose subsequently to the execution of that contract amounted to more than $1,000.00. The amount of the claims which arose prior is not stated in the record, but as the corporation with net assets of $6,000.00, was insolvent and the subsequent claims amounting to about $1,000.00, it is apparent that the prior claims amounted to more than $5,000.00.

The hearing upon the claim was had before the Special Master on July 17, 1922. He held that the failure to record the contract of sale reserving title (which will be treated herein and termed a chattel mortgage), within the statutory period of 10 days and until after the appointment of a Receiver, left the claimant in the position of an unsecured general creditor. Upon exceptions, Judge Mauldin confirmed the report, and from his decree the claimant has appealed.

The question whether or not the claimant is entitled to any preference in the distribution of the net proceeds of sale, is to be decided upon the relative rights of the Receiver, representing all the creditors, and the holder of a chattel mortgage not recorded within the time required by the statute and not until after the appointment of the Receiver.

A Receiver is the officer of the Court—as he has been termed, the arm of the Court—appointed by the Court to receive and preserve the property or fund in litigation, together with the rents, issues and profits, and to apply or dispose of them at the direction of the Court. The Receiver of an insolvent corporation

represents, not only the corporation, but also its stockholders and creditors, and it is his duty to assert and protect the rights of each of these several classes of persons; he is regarded as a Trustee for them.   23 R. C. L., 7.   The Court will see that, in the distribution of the assets of the corporation, it will be effected with proper consideration for the legal and equitable rights of all concerned.   The property becomes a trust fund for the payment of debts, and the Receiver simply holds it for the benefit of those ultimately entitled, in law or equity, to it.

This being true, it is clear that the appointment by the Court can vest in the Receiver no greater interest than the insolvent possessed.   As is said in 34 Cyc., 191:

"A Receiver can acquire no other, greater, or better interest than the debtor had in the property, and to this extent the Receiver has been held to stand in the shoes of the debtor."

It is suggested in many authorities that the appointment transfers the title of the insolvent's property to the Receiver; but the more logical conclusion is that the title remains in the insolvent, to be disposed of, as the Court may decide, through its officer the Receiver.   It is quite certain that the Receiver is in no sense a creditor or purchaser. See authorities cited upon this point in *Carroll v. Cash Mills*, 125 S. C., 332, 118 S. E., 290, April term, 1922.

At the time of the appointment of the Receiver in the case at bar, the machine covered by the claimant's reservation of title contract, or chattel mortgage, passed from the possession of the insolvent corporation to that of the Receiver, incumbered exactly as it was before.   The title, whether considered as not having passed from the seller to the buyer, or still remaining in the buyer, or vested in the Receiver, underwent no metamorphosis.   In 34 Cyc., 348, it is said:

"Under the general rule that a Receiver takes the property subject to all valid prior liens, such incumbrances are entitled to protection and to payment out of the property which they cover."

In an extended note to Ann. Cas., 1916-A, 1258, it is said:

"By the weight of authority a conditional sale contract, valid as between the original parties is also valid as against the vendee's Receiver, and may be enforced against him,"— citing cases from New Jersey, Colorado, New York, North Carolina, Oklahoma, Washington, and Federal Courts.

In *Sayles v. Water Co.*, 141 N. Y., 603; 36 N. E., 740, the opinion in 62 Hun, 618; 16 N. Y. Supp., 555, was affirmed, in which the Court held:

"By the receivership the Receiver got no better or greater right than the Globe Knitting Company had, and could only as Receiver, convey the interest which vested in him as the Receiver; and if, as between the defendant and the knitting company, defendant retained the title to the filter, the same right would remain in the defendant as against the Receiver and his grantee. As a general rule the Receiver gets only such title as the defendant or judgment debtor has in the estate of which he takes possession. * * * Adopting, as I think we must, this as the settled law, we must hold that if the defendant, by the reservation in the bill of sale, reserved the title to this filter, or, in other words, if the delivery of the filter under that agreement conferred no title in the knitting company, then the Receiver got no title by virtue of the receivership, and could confer none upon the purchaser from him."

To the same effect are *Ardmore v. Briggs,* 20 Okl., 427; 94 Pac., 533; 23 L. R. A. (N. S.), 1074; 129 Am. St. Rep., 747; 16 Ann. Cas., 133. *Sumner v. Wolten,* 61 Wash., 689; 112 Pac., 1109; 23 R. C. L., 56; 34 Cyc.,

191. *Auten v. City Electric St. R. Co.* (C. C.), 104 Fed., 395. *McRae v. Dredging Co.* (C. C.), 86 Fed., 344. *Bradford v. United Co.,* 11 Del. Ch., 76; 97 Atl., 620. *Bank v. Lawrence,* 194 Mich., 200; 160 N. W., 601. *Philadelphia Trust Co. v. Traction Co.,* 258 Pa., 152; 101 Atl., 970. *Brown v. Hunt,* 111 Wash., 564; 191 Pac., 860. *Trust Co. v. Elder* (Del. Ch.), 112 Atl., 370. *Wright v. Seaboard Co.* (C. C. A.), 272 Fed., 807. *Peterson v. Lindskoog,* 93 Ill. App., 276. *Bank v. McGettigan,* 152 Ind., 582; 52 N. E., 793; 71 Am. St. Rep., 345. *Cramer v. Iler,* 63 Kan., 579; 66 Pac., 617. *Battery Park Bank v. Western Carolina Bank,* 127 N. C., 432; 37 S. E., 461. *Knickerbocker v. Phosphate Co.,* 62 Fla., 519; 56 South., 699. *Lawson v. Warren,* 34 Okl., 94; 124 Pac., 46; 42 L. R. A. (N. S.), 183; Ann. Cas. 1914C, 139.

It appears, therefore, beyond question, upon reason and authority, that when the Receiver took possession of the machine, then subject to the reservation of title contract held by the claimant, he did not, by the order of his appointment, acquire any greater interest in it than Hobbs-Henderson Company had, which was the right to the possession and use of the machine, subject to what was practically a chattel mortgage in favor of the American Slicing Machine Company, securing the unpaid portion of the purchase price. As between the Receiver and the claimant the priority of the claimant is clear. But it does not necessarily follow from this conclusion that the claimant is entitled to recover the possession of the machine, or to a preferred claim out of the proceeds of sale, as against both classes of creditors, prior and subsequent. The Court in the administration of the insolvent estate is bound to recognize and protect, not only the rights of the claimant as a mortgagee of the machine as against the Receiver, but the rights of creditors as they existed at the time of the appointment of the Receiver, as against the mortgagee. The

so-called chattel mortgage was not recorded within the time required by the statute, Section 3542, Code of 1912; and that statute provides that, if not, it shall be void as to subsequent creditors, whether by lien or simple contract.

The effect of the decree is to remit the claimants to the class of general unsecured creditors, so far as both prior and subsequent creditors are concerned. There can be no doubt that under the section referred to, the lien of the claimant's mortgage is void as to subsequent creditors, but the statute makes no such provision in favor of prior creditors. As to them the unrecorded mortgage will be as valid as it was between the mortgagor and the mortgagee, and to place the claim of the holder of an unrecorded mortgage upon the same plane as that of prior creditors is to deny the former what he is clearly entitled to, precedence over such prior creditors.

The subsequent creditors in the case are unsecured creditors. They rank equally with the prior creditors, with this advantage, however, over the prior creditors: The statute, in protection of their interests, denies to the holder of the unrecorded mortgage his lien upon the specific chattel and the right to withdraw its value from the net amount for distribution. The percentage of that amount to which the subsequent creditors are entitled is, therefore, ascertained by dividing such net amount (including the proceeds of the sale of the mortgaged chattel) by the total amount of claims, including the claim secured by the unrecorded mortgage. The unrecorded mortgage, however, being perfectly valid as between the mortgagee and the prior creditors, they are not entitled to the consideration extended to the subsequent creditors, and the calculation of their percentage must be based upon the amount of the assets, $6,000, less the value of the mortgaged chattel, $290.00. For example, assume that the following statement of claims is correct (purely arbitrary, for the purpose of illustration) :

| | |
|---|---|
| Prior Creditors .......................... | $ 8,710.00 |
| Chattel Mortgage ......................... | 290.00 |
| Subsequent Creditors ..................... | 1,000.00 |
| | |
| Total Claims ............................ | $10,000.00 |

and that the net amount for distribution, including the value of the chattel ($290), is $6,000.00.

The subsequent creditors are entitled to hold that $290.00, in the total assets, in estimating the amount of their percentage, which should be $6,000.00 divided by $10,000.00, equal to 60 per cent. or $600.00.

The prior creditors not being entitled to the retention in the assets of the $290.00 in estimating their percentage, it must be withdrawn, leaving $5,710.00, as the fund in which the prior creditors are entitled to participate. The value of the chattel being withdrawn from the assets, the claim also should be withdrawn from the total debts. Therefore, 6,000—290 divided by 10,000—290 equal to 58.8053 per cent. and upon $8,710.00 that would be $5,121.95 for the prior creditors.

| | |
|---|---|
| The subsequent creditors would get .......... | $ 600.00 |
| The prior creditors ........................ | 5,121.95 |
| The mortgagee ............................ | 278 05 |
| | |
| | $6,000.00 |

The mortgagee's claim is reduced from $290.00 to $278.05, for the reason that the subsequent creditors, being entitled to $600.00 and getting 58.8053 per cent. of their claims $588.05, are entitled to the difference out of the mortgagee's claims, $11.95.

Neither the prior nor the subsequent creditors have any right to complain of this result, for by it each class gets all that it is entitled to. The prior creditors cannot object that the unrecorded mortgage is given priority over them, for that is the necessary legal consequence; the subsequent cred-

itors cannot object, for by the displacement of the lien of the mortgage they secure all they are entitled to, their full percentage of the net amount for distribution, which includes the proceeds of the sale of the mortgaged chattel.

The case of *Hastings v. Lincoln Trust Co.*, 115 Wash., 492; 197 Pac., 627; 18 A. L. R., 583, cited by the respondent, has no application, as that case was decided under a statute of the State of Washington which provides that chattel mortgages recorded out of time are "void as against all creditors of the mortgagor both existing and subsequent." The same is true of *in re Willcox v. Howe*, 70 Conn., 220; 39 Atl., 163.

Ordinarily in the sale of a stock of goods in bulk. or of any other enterprise, for that matter, with appurtenances and fixtures, the assets do not bring their full value, and the holder of a lien upon a specific part of the assets should bear his proportionate share of the loss. But where, as in this case, the Receiver and his purchaser had notice before the sale of the claimant's lien and the claimant took no part in the consent order of sale, the claimant is not chargeable with any loss on that account.

In arriving at the foregoing conclusions, the possible effect of the amendment of 1914 to Section 3542 (28 Stat., 482), upon Section 3740, has not been considered, in view of the statement of the respondent's counsel:

"As the reason for the enactment of the amendment did not apply to Section 3740, there would seem to be no justification for holding that the Legislature intended by the amendment to Section 3542 to work any change in Section 3740."

Upon the reargument of this appeal, however, counsel for the respondent insists that he should not be bound by that statement in his former brief, and now contends that the amendment of 1914 was intended to apply to Section 3740 as well as Section 3542; and that as the chattel mort-

gage was not recorded until after the Receiver was appointed, at a time when the mortgagor was powerless to execute and deliver a mortgage, it is as if it had never been recorded at all.

The effect of the amendment of 1914 to Section 3542 upon Section 3740 has been considered in the case of *Carroll v. Cash Mills,* 118 S. E., 290, recently filed, and the conclusion of the Court there announced was that "the regulations of Section 3542 [as amended by the Act of 1914] as to the time, manner and effect of the recording Act, apply equally to Section 3740."

And, conceding, for the moment, the correctness of the respondent's position as above stated, the effect will simply be to allow the subsequent creditors priority over the unrecorded mortgage, a matter conceded upon the argument by counsel for the appellant, and hereinbefore allowed.

The judgment of this Court is that the decree of the Circuit Judge be reversed, and that the case be remanded to the Circuit Court for administrative orders in conformity with the foregoing conclusions.

Mr. Justice Watts concurs.

Mr. Justice Fraser: I concur under *Carroll v. Cash Mills,* 118 S. E., 290.

Mr. Justice Marion concurs.

Mr. Chief Justice Gary (dissenting) : The following statement appears in the record:

"On February 7, 1922, Lipscomb-Hussell Company filed a creditors' bill against Hobbs-Henderson Company, a corporation, engaged in the mercantile business at Central, S. C., in the Court of Common Pleas for Pickens County. The bill alleged the imminent insolvency of the defendant corporation and prayed for a Receiver to conserve the assets to operate the defendant's mercantile business temporarily and to liquidate same. The defendant, on the

same day, accepted service of the summons and complaint, and consented to the appointment of a Receiver.

"On the same day, February 7, 1922, Judge Frank B. Gary made an order appointing J. P. Abernathy Receiver upon filing $5,000.00 bond, and authorized the Receiver to operate the mercantile business. The order, among other things, provided: 'That all creditors of the defendant and all other persons be, and they are hereby, enjoined from proceeding against the defendant or its property except in this action; and the case is referred to C. E. Robinson, Esq., as Special Master, to call in creditors and to file and report on claims."

J. P. Abernathy immediately qualified as Receiver, and took charge of the business.

On March 31, 1922, Judge T. J. Mauldin filed an order in the cause authorizing and directing the Receiver to sell the assets of Hobbs-Henderson Company to a third party for $7,000.00 cash, and the cancellation of about $6,000.00 of indebtedness. The order provided that "said assets shall be sold and delivered free and clear of incumbrance, the lien or other rights of any and all creditors as to said assets being hereby transferred to the purchase money." On the same day, March 31, 1922, the Receiver delivered the assets to the purchaser and received the purchase price.

Thereafter, American Slicing Machine Company filed its claim with the Special Master, claiming a certain meat slicing machine formerly in the possession of the Receiver, and, if it could not be returned, claiming the sum of $290.00. The claim grew out of the following facts:

On October 13, 1921, American Slicing Machine Company entered into a contract with Hobbs-Henderson Company for the sale and purchase of a meat slicing machine. The machine was delivered to Hobbs-Henderson Company, at Central, about the same time, and was put to use in its store. The Receiver found it in the store when he took

charge, and it was included in the assets sold and delivered on March 31, 1922, under the order of Judge Mauldin. The contract covering the sale and purchase of this machine was duly recorded in the office of the Clerk of Court of Pickens County in Chattel Mortgage Book C C, at pages 524, 525, on March 30, 1922, the day before the sale of the assets under the order of Judge Mauldin.

The claims presented to and allowed by the Special Master included more than $1,000.00 worth of goods sold and delivered to Hobbs-Henderson Company, after the date of American Slicing Machine Company's contract, the sellers of which had no notice of said contract.

The majority of the claims filed with the Receiver in this case were for debts contracted before the date of the contract entered into between Hobbs-Henderson Company and American Slicing Machine Company, which is the contract in question.

The hearing on the claim was had before the Special Master on July 17, 1922. The claimant took the position that under the terms of the contract it was entitled either to the return of the machine or the payment of the unpaid portion of the purchase price, to wit, $290.00, out of the assets in the hands of the Receiver. The Receiver took the position that the failure to record the contract until after his appointment and qualification left the claimant in the position of an unsecured general creditor. The estate, upon liquidation, proved to be insolvent.

The Special Master sustained the position of the Receiver. By consent of counsel the matter was argued before Judge Mauldin at Chambers on the same day, on exceptions to the Special Master's report, and from his order overruling the claimant's exceptions the case now comes to this Court.

In the contract between American Slicing Machine Company and Hobbs-Henderson Company is this provision:

"The said machine shall be the property of the American Machine Company until fully paid for by the undersigned."

Section 3740 of the Code of Laws, 1912, is as follows:

"Every agreement between the vendor and vendee, bailor or bailee of personal property, whereby the vendor or bailor shall reserve to himself any interest in the same, shall be null and void as to subsequent creditors (whether lien creditors or simple contract creditors) or purchasers for valuable consideration without notice, unless the same be reduced to writing and recorded in the manner now provided by law for the recording of mortgages; but nothing herein contained shall apply to livey stable keepers, innkeepers, or any other persons letting or hiring property for temporary use or for agricultural purposes, or depositing such property for the purpose of repairs or work or labor done thereon, or as a pledge or collateral to a loan."

Among the claims allowed by the Special Master were those of subsequent creditors to the extent of more than $1,000.00, without notice of the mortgage executed by Hobbs-Henderson Company, in favor of American Slicing Machine Company.   The mortgage was null and void as to those creditors.   The priority of these subsequent creditors was not affected by the appointment of a Receiver, nor by the recording of the mortgage thereafter.

When the section of the Code of Laws, 1912 (now numbered 3740), was under consideration in the case of *Armour v. Ross,* 78 S. C., 294; 58 S. E., 941, 1135, the words "Whether lien creditors or simple contract creditors" had not been inserted.   That section was amended in 1898.

The judgment should be affirmed.