[No. 19225.   Department Two.   September 1, 1925.]

ANDREW QUALLEY *et al., Respondents,* v. SNOQUALMIE
VALLEY BANK *et al., Appellants.*
JOHN JOYCE, *Appellant,* v. ANDREW QUALLEY *et al.,*
*Respondents.*[1]

PLEDGES (3)—DELIVERY AND POSSESSION—ESCROW AGREEMENT—
CONSTRUCTION.  There was no pledge of collateral, for want of any
delivery to the pledgee, where it was placed in escrow under an
agreement by which the escrow holder was authorized to deliver it
only (1) if the original debt was paid, (2) if the debtor repur-
chased it, or (3) if the creditor sold it and applied it on the debt,
and no such situation ever arose.

ESCROW (6)—PERFORMANCE OF CONDITIONS—WRONGFUL DELIVERY
OF NOTE—LIABILITY OF PARTIES.  Where a debtor made use of col-
lateral, put up in escrow, by inducing the escrow holder to deliver
it, contrary to the terms of the escrow agreement, on a pledge to
another who inforced it by suit, the debtor is entitled to have the
amount credited on his debt, pursuant to the escrow agreement; and
the theory that a pledgee may make a repledge has no application,
where there was no pledge in the first instance for want of any
delivery to the pledgee.

Appeal from a judgment of the superior court for
King county, Tallman, J., entered December 13, 1924,
upon findings in favor of certain plaintiffs and de-
fendants, in consolidated actions to compel satisfac-
tion of a mortgage, and to foreclose mortgages, tried
to the court.  Affirmed.

*Farrell, Meier & Hess,* for appellants.

*Meyers & Couden, Edward Judd,* and *John A. Soule,*
for respondents.

MACKINTOSH, J.—The mind of a Gaboriau might
grasp the turbinated whirl of incidents in this case,
but one not similarly endowed experiences some diffi-
culty in unraveling the confused skeins.  As near as

[1] Reported in 238 Pac. 915.

it is possible to state the facts, they are: In October, 1918, A. Q. with his then wife E. Q. sold land in Benton county to P., taking P.'s note and mortgage on the land for $4,800, dated October 1, 1918, and payable in five years, with semi-annual interest. In August, 1919, A. Q. purchased land in King county from P. N. and M. N. In that transaction A. Q. and H. Q., his then wife, gave to P. N. their note for $5,000, dated August 1, 1919, payable in five years, with annual interest, and to secure this note gave a mortgage on the land purchased from P. N., and in addition to this mortgage gave P. N., as further security for the payment of the note, an agreement concerning the note and mortgage which A. Q. had received from P. on the Benton county land. On September 15, 1919, this escrow agreement was drawn up, signed by A. Q. and P. N. and their wives, which was accepted by the escrow holder, the Snoqualmie Valley Bank, on the 25th of September, which was in the following language:

"Tolt, Wash., Sept. 15, 1919.
"To the Snoqualmie Valley Bank:
"We herewith hand you a note and mortgage for $5,000 made and executed by Andrew Qualley and Hilda Qualley his wife, to Peter Nelson, covering certain properties situated in King county, Washington, formerly known as the Pete Nelson Ranch, and more particularly described in said mortgage; together with a satisfaction of said mortgage executed by Peter Nelson and wife.

"You will please cause the said mortgage to be recorded in the office of the county auditor of King county, Washington, and hold all these papers in your possession in accordance with the instructions hereinafter contained.

"We are also handing you herewith a note in the sum of $4,800 secured by a mortgage executed by E. E. Pyle and Alletha J. Pyle in favor of Andrew Qualley and Emma Qualley, his then wife, covering certain real

estate described in said mortgage; together with an assignment of the note and mortgage to Peter Nelson.

"You will please cause this assignment to be recorded in the office of the county auditor of Benton county, Washington, and hold these papers subject to instructions hereinafter set forth.

"The last note and mortgage becomes due the 1st day of October, 1923, and in event it is fully paid at maturity, with interest, then Peter Nelson shall cause the same to be satisfied and you may give credit on the $5,000 for the principal sum of $4,800 and the interest also, providing the interest shall have been paid to date on the $5,000 note, otherwise it shall be applied as interest on the last mentioned note.

"Andrew Qualley reserves the right to re-purchase the said $4,800 note at any time prior to maturity, providing it is still owned by Peter Nelson, upon the payment of its face value therefor, which sum shall be applied on the said $5000 note; and in the event of such election to re-purchase the said $4,800 note and its security, together with a re-assignment of the said mortgage shall be delivered to said Andrew Qualley upon making full payment thereof.

"Peter Nelson shall have the right to sell said $4,800 note at any time prior to its maturity, providing he shall give credit for its then full face value by endorsement upon the said $5,000 note.

"In the event of a default with respect to the $4,800 note which will entitle Peter Nelson to foreclose the security thereon, then in that event the said $4,800 note and mortgage shall be delivered to Peter Nelson; likewise a default with respect to the $5,000 note shall entitle Peter Nelson to possession thereof with the evidence of security for the foreclosure thereof.

"The purpose of this escrow agreement is to protect both parties thereto; to guarantee to Peter Nelson the security of his $5,000 note from Andrew Qualley and wife, and to guarantee to Andrew Qualley that at maturity he shall have to pay to Peter Nelson no greater sum than that provided for in his said $5,000 note, and all parts of this agreement shall be so construed as to guarantee these last named respective rights.   This

agreement shall bind the heirs and assigns of the parties hereto.''

In January, 1920, M. N. died, leaving three minor children. In the probate of her estate in March, 1920, P. N. was authorized to complete the arrangements entered into before her death for the purchase of certain land, and in this transaction P. N. gave a first mortgage to an insurance company for $4,000, upon the new farm, leaving a balance due on the purchase price of $5,000, which was obtained by P. N. borrowing it from J. J. To secure this loan, P. N. gave to J. J. his promissory note for $5,000, dated April 17, 1920, due in five years, and as security he gave to J. J. a second mortgage upon the newly acquired property for $5,000, and as further security he assigned to J. J. his interest in the $5,000 note of A. Q. and wife and all the collateral thereto, which was the $4,800 note and mortgage of P. given to A. Q. on the Benton county land. P.'s $4,800 note and A. Q.'s and H. Q.'s note were in the actual physical possession of the Snoqualmie Valley Bank, and remained there until after P. N. purchased the new farm, and until default in the payment of the annual interest due on the $5,000 note of A. Q. and H. Q., payable on August 1, 1923. While the testimony shows that the note and mortgage were in the physical possession of the bank until turned over to J. J.'s attorneys for the purpose of foreclosing the mortgage on the Benton county land, the bank's managing officer was acting at different times in different capacities in regard to the instruments; he was escrow holder for A. Q. and P. N.; he was P. N.'s agent in borrowing $5,000 from J. J.; he was agent of J. J.

On June 20, 1921, the Benton county land was transferred by P. to F. and L., and on May 22, 1923, F. and L. conveyed it to H. Q. On June 19, 1923, A. Q., hav-

ing been advised that his $5,000 note given to P. N. should be considered paid by reason of the use which P. N. had made of it and the P. note, began an action to compel the satisfaction of his mortgage and the surrender of his $5,000 note. This is the first of the two consolidated actions which are before us, A. Q. being Andrew Qualley, the plaintiff and respondent in the action where the Snoqualmie Valley Bank is defendant and appellant.

The semi-annual interest upon the P. note being due in April, 1923, and not paid, and the annual interest being due on the A. Q. note on August 1, 1923, and not being paid, demand was made upon A. Q. for the interest instalments, and upon his failure to pay, on September 1, 1923, J. J. began an action to foreclose the mortgage. This is the second of the two cases here consolidated in which John Joyce is the plaintiff and appellant and Andrew Qualley respondent.

On October 1, 1923, J. J. began an action in Benton county to foreclose the P. mortgage on the Benton county land, and in that action A. Q. and H. Q., his wife, entered an appearance, but, taking no further steps in the proceedings, decree was entered on January 16, 1924, foreclosing the mortgage and awarding personal judgment against A. Q. and H. Q., and on February 16, 1924, the property was sold by the sheriff and bid in for $3,000, leaving a deficiency of approximately $3,600.

Upon a trial of the consolidated cases, a decree was entered that the Snoqualmie Valley Bank deliver to A. Q. and H. Q. for cancellation and release the $5,000 note dated August 1, 1919, by A. Q. and H. Q., payable to P. N., and also the mortgage bearing the same date on the King county property given to secure that note, and also the blank release of the mortgage which the

bank had held under the escrow agreement, the decree further providing that the action of J. J. against A. Q. be dismissed, this decree being based upon findings that, by the terms of the escrow agreement, it is provided that P. N. could sell and dispose of the P. note and mortgage at any time before its maturity, and that if he did so it should satisfy and discharge the note and mortgage of A. Q. and H. Q. given to P. N., and that before the maturity of either the mortgage or any default in the terms of either, P. N. did sell and dispose of the P. note and mortgage, and that thereby the note and mortgage of A. Q. and H. Q. became paid and satisfied, and that that note and mortgage are the same instruments sought to be cancelled in the first of these consolidated causes, and the same which is sought to be foreclosed in the second consolidated cause, and that all the documents are still in the possession and control of the Snohomish Valley Bank as escrow holder.

The case, as argued by the appellants, is stated to involve the re-pledge of notes and mortgages by the pledgee, the situation being asserted to be one where a principal obligation, together with a collateral note and mortgage, were placed in escrow, and while still in the hands of the escrow holder the pledgee obtained a loan thereon from a third person and as collateral re-pledged his interest in both securities, the securities remaining at all times in the hands of the escrow holder. Extended argument is engaged in concerning the pledgee's right to re-pledge and many authorities are cited sustaining such a right. Other authorities are offered to the effect that a contract which authorizes the pledgee to sell the paper does not prohibit a re-pledge of it, and that a pledgee of a note and mortgage has a right to foreclose the mortgage. As

we gather the view of the respondents, they are that these questions are not in the case; that, while there are authorities sanctioning a re-pledge by a pledgee of collateral, there are many authorities holding to a contrary effect, but that a discussion of that question is beside the issues in this case, for the reason that the escrow agreement does not constitute a pledge in any respect.

The view taken by the respondents meets our acquiescence, for the reason that an examination of the testimony and exhibits discloses no pledge by A. Q. of the P. note to secure his indebtedness to P. N. The escrow agreement was not a contract of pledge.

One of the prime requisites of a pledge is that the pledgor has parted with his property and that the pledgee has possession or control over the property. In *Hastings v. Lincoln Trust Co.*, 115 Wash. 492, 197 Pac. 627, we said:

"It is elementary law that the delivery of pledged property by the pledgor to the pledgee is absolutely necessary to the life of the contemplated pledge. It is well said in *Security Warehousing Co. v. Hand*, 143 Fed. 32 (41): 'Delivery of possession is the very life of a pledge. No mere agreements respecting possession can create it. The contract of pledge cannot exist outside of the fact of change of possession.' 21 R. C. L. 643. It is of course not necessary, under all circumstances, that the delivery be an actual physical movement of the property from the hands or control of the pledgor to the pledgee; but it must in any event be of such nature that the control and dominion over the property passes from the pledgor into the absolute control and dominion of the pledgee."

The rule receives sanction and statement in *Churchill v. Miller*, 90 Wash. 694, 156 Pac. 851; *Bank of California v. Danamiller*, 125 Wash. 255, 215 Pac. 321; *Lipman v. Ross*, 130 Wash. 319, 226 Pac. 1017; *Laube*

*v. Seattle National Bank,* 130 Wash. 550, 228 Pac. 594. To the same effect are the announcements in these cases: *Casey v. Cavaroc,* 96 U. S. 476; *Hook v. Ayres,* 80 Fed. 978; *Harding v. Eldridge,* 186 Mass. 39, 71 N. E. 115; *Baker v. Tolles,* 68 N. H. 73, 36 Atl. 551; *Textor v. Orr,* 86 Md. 392, 38 Atl. 939; *Koons v. First National Bank,* 89 Ind. 178; *Storts v. Mills,* 93 Mo. App. 201; *Brown v. Hudson,* 14 Tex. Civ. App. 605, 38 S. W. 653.

The escrow agreement does not conform to this requirement. Under it A. Q. does not unqualifiedly part with his property, nor has unqualified possession and control been given to P. N., nor to the bank as his agent or representative. The bank, according to the agreement, is to hold the property for both A. Q. and P. N., and it is only under certain conditions that either one of them has the unqualified possession or right of possession. *Gammon v. Bunnell,* 22 Utah 421, 64 Pac. 958. The bank is to dispose of the property according to the terms of the agreement; one of those terms being that P. N. might get possession of the P. note for the purpose of suit. If such possession were given, it might be that P. N. would then become a pledgee, but if it became a pledge under those circumstances it would be one for a specific purpose and would not give P. N. the right to dispose of the property in any other way than that provided. There is language in the agreement which would indicate that the transaction was a sale, but there is no language which can be construed as a pledge.

By the terms of the agreement the bank could part with the P. note to either A. Q. or P. N. in three situations; (1) if A. Q. paid his $5,000 note he could have the P. note returned to him by way of re-purchase; (2) P. N. might exercise his right to use the P. note by selling it, whereupon A. Q. would receive a credit of

$4,800 on his $5,000 note, or (3) a situation which we have already referred to might arise, where P. N. on default of payment on the principal or interest of the P. note might have it delivered to him for the purpose of bringing suit. The bank had no right to deliver possession to either of the parties to the agreement, except on one of these situations arising. No such situation arose and P. N. never became a pledgee. The delivery by the bank to J. J. to allow him to collect on the note and foreclose the mortgage was not a contingency provided for in the agreement, but amounted to a violation by the bank of its duty under that agreement, and the bank was, in law, holding the note and mortgage as the agent of J. J. P. N., thus having made use of the note and mortgage, must account to A. Q. for their value, and that results in the conclusion that the trial court was correct in holding that the note for $5,000 ($400 on the principal having been paid shortly after the note was given) of A. Q. and H. Q. should be delivered up for cancellation, together with the mortgage securing it.

Judgment affirmed.

TOLMAN, C. J., FULLERTON, HOLCOMB, and ASKREN, JJ., concur.