[No. 27669. Department One. August 26, 1940.]

ADOLPH KIETZ, *Respondent and Cross-appellant,* v. GOLD POINT MINES, INC., *Appellant,* WEST CENTRAL SECURITIES CORPORATION, *Defendant.*[1]

[1]Reported in 105 P. (2d) 71.

*E. D. Phelan,* for appellant.

*Hyland, Elvidge & Alvord* and *Monroe Watt,* for respondent and cross-appellant.

SIMPSON, J.—This action was instituted by plaintiff to recover the sum of one thousand dollars due upon a promissory note signed by defendant West Central Securities Corporation, and to foreclose a lien upon twenty-five thousand shares of stock in the Gold Point Mines, Inc., alleged to have been pledged to secure the payment of the note.

The second amended complaint alleged the giving of the note by West Central Securities Corporation and the pledge of the stock to secure its payment. It then stated:

"That the pledge of the said certificate of stock for 25,000 shares was well known to the Gold Point Mines, Inc., and to its officers, and they well knew that the said certificate of stock was pledged to the said Adolph Kietz, the plaintiff herein. That the writ of garnishment or attachment mentioned in said pledge agreement was dissolved and said certificate freed from the effect thereof and no other lien or attachment was ever placed against said stock.

"That after the making, execution, and delivery of said promissory note and the pledge agreement hereinabove mentioned, the said Gold Point Mines, Inc., did

unlawfully cancel the said certificate for 25,000 shares of stock and issue new stock in lieu thereof, and has permitted and allowed other persons, strangers to this transaction, to take possession of the said stock evidenced by the said certificate for 25,000 shares, notwithstanding the said Gold Point Mines, Inc., and its officers, had written and verbal notice and were fully cognizant of the facts aforesaid. . . .

"That said promissory note provides for a reasonable attorneys' fee in case suit or action is commenced to collect same, and $100.00 is a reasonable sum to be allowed therefor."

A second cause of action alleged:

"That the above named defendant, Gold Point Mines, Inc., and its officers, and C. E. Randall, the then Secretary of the West Central Securities Corporation, a corporation, and acting for and on behalf of said corporation, conspired to cheat and defraud the above named plaintiff of the security mentioned in plaintiff's first cause of action herein, notwithstanding the fact that the West Central Securities Corporation, on the one hand, and the Gold Point Mines, Inc., on the other hand, knew that the above named plaintiff was a creditor of the West Central Securities Corporation on the promissory note set forth in the first cause of action herein, and did cause the said certificate of stock for 25,000 shares of stock to be delivered over to the Gold Point Mines, Inc. to be reissued and sold to third persons, thereby depriving the said plaintiff of his said security under the said certificate of stock for 25,000 shares, which said stock was worth at all the times herein mentioned the sum of $12,500.00; that the said West Central Securities Corporation did enter into such conspiracy and did so cheat and defraud the said plaintiff and prevent him from collecting his said promissory note for the reason that said corporation was insolvent and did not have any property upon which the said collection could be made other than the said certificate of stock for the 25,000 shares of Gold Point Mines, Inc."

By their answer, defendants put in issue the allegations of the complaint.

The case was tried to the court, with the result that judgment was entered against defendants for the sum of one thousand dollars with interest from October 10, 1934, and attorney's fees in the sum of one hundred dollars. Defendant Gold Point Mines, Inc., and plaintiff have appealed from the judgment.

The errors assigned will be noticed as we proceed.

Reference will be made to plaintiff as respondent, Gold Point Mines, Inc., as appellant, and West Central Securities Corporation as defendant.

The facts are these: Appellant and defendant are Washington corporations doing business in Seattle. Defendant handled some stock and performed certain services for appellant. October 10, 1934, defendant borrowed from respondent the sum of one thousand dollars and, as evidence of the indebtedness, gave its promissory note in that sum payable six months after date. On that day, and as part of the same transaction, defendant executed the following agreement:

"KNOW ALL MEN BY THESE PRESENTS: That the WEST CENTRAL SECURITIES CORPORATION, a corporation, hereby assigns, pledges and transfers to ADOLPH KIETZ, twenty-five thousand (25,000) shares of stock evidenced by Certificate No. 194 or 197, of the GOLD POINT MINES, INC., to have and to hold said 25,000 shares as collateral to secure that certain note of even date herewith, signed, executed and delivered by the WEST CENTRAL SECURITIES CORPORATION, to the said ADOLPH KIETZ, and being for the sum of $1,000.00, which was this day loaned by the said ADOLPH KIETZ, to the said WEST CENTRAL SECURITIES CORPORATION; that a duplicate of this pledge agreement shall be placed in the corporate records and held by the officers of the said WEST CENTRAL SECURITIES CORPORATION, and that the certificate of stock above mentioned and assigned shall be placed in the hands of ADOLPH KIETZ, as soon as the same is released from garnishment or attachment, and in the event this note is not paid when due, then this certificate may be presented and by authority of this

pledge a transfer of the same and the number of shares covered by said certificate shall be issued by said mining corporation; and it is hereby agreed that the certificate of stock assigned by these presents and pledged hereunder shall be transferred back and returned by said ADOLPH KIETZ, to the said WEST CENTRAL SECURITIES CORPORATION, on the payment by said corporation and the makers and endorsers of this note of the full amount of the principal thereof, plus the rate and amount of interest thereon, with the right of the said WEST CENTRAL SECURITIES CORPORATION, or any maker or endorser of said note to redeem said stock at any time that he or they can raise money sufficient to repay said loan."

Just prior to the time the note was given by defendant, appellant had brought an action against defendant through an assignee to collect the sum of $1,678.18. In that action, a writ of garnishment had been served upon appellant, in order to subject twenty-five thousand shares of the Gold Point Mines, Inc., stock to the lien of the judgment sought by the plaintiff in that action. The action was dismissed June 19, 1935, thereby releasing the stock certificate from the writ of garnishment. The stock certificate had been turned over to the secretary of appellant by the attaching assignee on November 15, 1934, which was after the transaction between respondent and defendant transpired. Appellant had full knowledge of the agreement, but retained possession of the stock certificate after the dismissal of the writ of garnishment. Defendant had not paid the amount due to appellant.

In order to assist defendant in paying its debts, R. H. White, president of appellant corporation, with the consent of the trustees of that company, secured the transfer to him of the twenty-five thousand shares of stock which had been released by the judgment of dismissal. White then proceeded to sell the stock for prices ranging from ten to fifty cents per share. The

money secured from the sale was used by him to pay the obligations of the defendant. Respondent made demand upon appellant for delivery of the stock which defendant had attempted to pledge to him, but never at any time succeeded in getting possession of it.

Appellant urges that respondent cannot maintain this action for the reason that the stock was not pledged to him, in that it had never been delivered to respondent.

The trial court stated in his oral opinion:

"I am satisfied, however, that no judgment could be rendered against the Gold Point Mines, Inc., for a delivery of this stock certificate because the evidence shows that the stock certificate has lost its identity and has been divided up and sold, as the Court has related here. I am satisfied no judgment against the Gold Point Mines, Inc., could be entered compelling them to issue a like certificate for that amount; but the Court is of the opinion that the Gold Point Mines, Inc., benefited from this transaction because I don't understand how White could be acting as president and manager and selling this stock instead of company stock if he were acting in good faith with his own company.

"I am satisfied there is sufficient here to show that the Gold Point Mines, Inc., benefited from this transaction and judgment will be entered under the second cause of action against both defendants for $1,000 and interest. A $100 attorney's fee will be allowed. . . .

"I am not entering any judgment on the collateral security; I am entering it on the conspiracy cause of action."

Rem. Rev. Stat., § 3822 [P. C. § 4523], reads:

"Any stockholder may pledge his stock by a delivery of the certificate or other evidence of his interest, but may, nevertheless, represent the same at all meetings, and vote as a stockholder."

In passing upon the question of necessity of delivery of personal property to complete a pledge, this

court stated in *Kuhn v. Groll,* 118 Wash. 285, 203 Pac. 44:

"It is true that the law requires a delivery of the pledged property from the pledgor to the pledgee and a retention of it by the pledgee in order to make the pledge fully effectual as security. We think the law applicable to the situation we find here is well stated in 21 R. C. L. 643, as follows:

" 'The requirement of possession is an inexorable rule of law, adopted to prevent fraud and deception, for, if the debtor remains in possession, the law presumes that those who deal with him do so on the faith of his being the unqualified owner of the goods. If, however, the pledgee has the thing already in his possession, the very contract transfers to him, by operation of law, a virtual possession thereof as a pledge the moment the contract is completed.' "

Of like import, see *Hastings v. Lincoln Trust Co.,* 115 Wash. 492, 197 Pac. 627, 18 A. L. R. 583; *Bank of California v. Danamiller,* 125 Wash. 255, 215 Pac. 321, 36 A. L. R. 753; *Qualley v. Snoqualmie Valley Bank,* 136 Wash. 42, 238 Pac. 915; *Hodge v. Truax,* 184 Wash. 360, 51 P. (2d) 357, 103 A. L. R. 420.

Our attention has been called to the following statement in 21 R. C. L. 647, § 13:

"In order to perfect the contract of pledge the delivery need not be made to the creditor himself, but it will be sufficient if the thing pledged is placed in the hands of a third person chosen by debtor and creditor to hold for the creditor, provided such third person knows of the trust and accepts the obligation it imposes."

That rule, however, is of no avail to respondent because appellant was not chosen by respondent and defendant as a holder of the stock, nor did appellant agree to hold the stock for respondent.

We hold, therefore, that the pledge of stock to respondent was not consummated.

The next question raised on this appeal is whether or not appellant was liable as a participant in a conspiracy.

■ Conspiracy means a combination of two or more persons by concerted action to accomplish an unlawful purpose, or some purpose not in itself unlawful by unlawful means. *Eyak River Packing Co. v. Huglen,* 143 Wash. 229, 255 Pac. 123, 257 Pac. 638; 15 C. J. S., Conspiracy, 996, § 1; 11 Am. Jur., Conspiracy, 543, § 3.

"To constitute a conspiracy the purpose to be effected by it must be unlawful in its nature or in the means to be employed for its accomplishment, and, where the object in view is lawful and no unlawful means are used, there can be no civil action for conspiracy, even though damage results and even though defendants acted with malicious motives." 15 C. J. S., Conspiracy, 998, § 3.

■ Relative to the release of the stock, White testified:

"The Gold Point Mines held onto the stock and, when it was released, it was released to me because I had taken care of all of the obligations. Q. Whose obligations? A. Of the West Central Securities Company, kept them out of jail. Q. What did you pay for the West Central from this Kietz money? A. I paid the sixteen hundred odd dollars they owed the Gold Point Mines and fourteen or fifteen hundred dollars of n. s. f. checks, or got the money to pay them off, handed that out in cash, and they took up the checks."

Before a party can be held liable as a conspirator, the evidence must show that such person entered into an agreement with the other conspirators to accomplish the object of the conspiracy. *Dart v. McDonald,* 107 Wash. 537, 182 Pac. 628.

Of course, in the absence of direct evidence in establishing a conspiracy, it may be established by circum-

stantial evidence. *American Sav. Bank & Trust Co. v. Bremerton Gas Co.,* 99 Wash. 18, 168 Pac. 775; *Karr v. Mahaffay,* 140 Wash. 236, 248 Pac. 801.

Giving respondent the most favorable construction of the evidence relative to conspiracy, we fail to see that the officers of appellant and defendant entered into any agreement to defraud respondent. The officers of the corporations secured the stock and sold it to pay debts of defendant, retaining but a portion of the proceeds for the benefit of appellant.

The good faith of Mr. White is shown by his uncontradicted testimony relative to an attempt to settle with respondent.

"Q. (By the Court) Did you offer him the money? A. Yes, I offered him to pay every bit of it. I had paid him some quite a time before that, sent him a check by mail for, I think it was, $200, and then I went to pay him the last and he said he had decided to take the stock instead of the money, and I said, 'I am trying to get this thing squared up for Mr. Randall of the West Central Securities Company.' Randall had obtained that money and I wanted to help him out, and I got the money to square the West Central Securities thing up. And he said that he wouldn't take the money, and I said, 'What did you do with the check I sent over?' And he said, 'I am still holding it.' And I told him to cash it if he cared for the money, and he came back and said something about having it with him, and I told him, 'You better get the money while you can get it because I don't know anything about this stock deal. You might not get the stock. You better take the money.' He said no, that he talked with Nethaway the night before and he said, 'I have decided not to take the money for it. I want the stock.' And I said, 'There is nothing more I can do. I am here, as I stated, to settle this, and there is nothing more I can do but go home,' and I went home, and I went immediately to the bank and canceled the check I had sent him for $100 or $200, stopped payment at the bank, and from then on I never had any more talk with Mr. Kietz."

We fail to see in what way the actions of appellant officers and those of the defendant corporation amounted to a conspiracy which would be the basis of an action against appellant. While it is true that the men interested in the corporations held offices in each of them and knew of the attempted pledge to respondent, and the sale of the stock which respondent claims was pledged to him, their acts were lawful within themselves, and they transgressed no law when the stock was sold.

In any event, appellant could not be held liable on the note signed by defendant, for the reason that one is not liable for a note not signed by him. Rem. Rev. Stat., § 3409 [P. C. § 4089]; *Nielson v. Crossett,* 3 Wn. (2d) 537, 101 P. (2d) 351.

Where a conspiracy results in the commission of a wrong, the cause of action sounds in tort and not in contract, though the acts constituting the wrong may affect contractual relationships. 15 C. J. S., Conspiracy, 1031, § 21; 11 Am. Jur., Conspiracy, 584, § 53.

The judgment rendered in this action provided for the recovery of the amount specified in the note and for attorney's fees. Such judgment under the rules just announced cannot stand.

Respondent bases his appeal upon the refusal of the trial court to render a judgment compelling appellant to reissue the stock and permit a foreclosure of the twenty-five thousand shares of stock named in the contract. What we have said relative to the pledge of stock, disposes of this question contrary to the contentions of respondent.

The judgment is reversed on appellant's appeal, and affirmed on respondent's appeal.

BLAKE, C. J., BEALS, MILLARD, and ROBINSON, JJ., concur.