[No. 17788. Department One. May 25, 1923.]

BANK OF CALIFORNIA, *Appellant,* v. LOUIS DANAMILLER,
*Respondent.*[1]

SALES (179-1)—CONDITIONAL SALES—ASSIGNMENT OF CONTRACT—
EFFECT—ON TITLE TO PROPERTY. The vendor's assignment of a con-
ditional sales contract of an auto truck for the purpose of security,
does not make the assignee a purchaser of either the contract or of
the property, but passes only the right to collect the money due and
apply it to the payment of the debt secured.

SAME (179-1)—CONDITIONAL SALES—ASSIGNMENT OF CONTRACT—
FOR SECURITY—EFFECT—INNOCENT PURCHASERS—TITLE. The vendor's
assignment of a conditional sales contract of a truck, for the pur-
poses of security, cannot be upheld as a pledge or chattel mortgage
of the vendor's reserved title or interest as against innocent pur-
chasers from the vendor; since there can be no valid pledge without
delivery of the thing pledged, and no valid mortgage creating a
secret lien without a due writing and notice, actual or constructive.

ESTOPPEL (35-1)—EQUITABLE ESTOPPEL—LOSS BY INNOCENT PARTY
—TAKING SECRET SECURITY. A bank taking the vendor's assignment
of a conditional sales contract for the purposes of security, without
any notice of record of its interest, when it might have secured itself
by a chattel mortgage of the vendor's reserved title, giving the
world notice of its claim, must suffer the loss sustained by innocent
purchasers, upon the vendor's fraudulent retaking possession and
disposing of the property without notice to the bank.

Appeal from a judgment of the superior court for
King county, Honorable Clay Allen, judge *pro tem-
pore,* entered December 14, 1922, upon findings in favor
of the defendant, in an action of replevin, tried to the
court. Affirmed.

*Kerr, McCord & Ivey,* for appellant.

*Grinstead, Laube & Laughlin* and *Thomas E. Davis,*
for respondent.

BRIDGES, J.—This is a replevin suit. The facts have
been stipulated and are as follows: On September 21,

[1] Reported in 215 Pac. 321.

1921, the Vulcan Manufacturing Company was the owner of a certain motor truck. On that day it conditionally sold it to Eliza and C. J. Miller. The usual conditional sales contract was entered into, which, among other things, fixed the price to be paid, the terms of payment, and provided that title should remain in the Vulcan Manufacturing Company until the whole purchase price was paid. This instrument was executed in triplicate; one copy was given to the Millers, the purchasers, one was filed with the county auditor for record, and the third was retained by the seller, Vulcan Manufacturing Company. On the same day this transaction took place, the Vulcan company assigned the conditional sales contract to Frank Waterhouse & Company, a corporation, as purchaser. This assignment was filed for record. It seems to be assumed that by this assignment Frank Waterhouse & Company received not only the conditional sales contract itself, but also such title to the truck as had been reserved by the Vulcan company. Not long after these transactions, Waterhouse & Company borrowed from the appellant, Bank of California, $9,000, and gave its note evidencing such indebtedness. This note contained the following clause: "As collateral security for the payment of this note" the maker does "hereby pledge and deliver to payee the following securities; automobile contracts. . . Eliza and C. J. Miller, $2,768.32."

At the time of the delivery of this note to the bank, the Vulcan Manufacturing Company-Miller conditional sale contract was physically delivered to the bank, Waterhouse & Company, indorsing its name on the back thereof. The Millers, being informed that the contract had been assigned to the bank, made two or three payments to it, according to the terms of their

contract. Thereafter it was agreed between Waterhouse & Company and the Millers that the latter should return to the former the truck covered by the conditional sales contract and receive another truck in its stead. This was done and a new conditional sales contract was made between Waterhouse & Company and the Millers covering the second truck, and the latter, assuming that that contract had also been assigned to the bank, made certain payments to it. The bank had no knowledge whatever of the exchange of trucks and assumed that all of the payments that had been made to it by the Millers were on account of the conditional sales contract which it held. Waterhouse & Company put the first truck in its sales room and directly sold it to the respondent, who had no actual notice of any of the foregoing transactions. When the bank learned that the Millers had exchanged trucks and that the one covered by the conditional sales contract held by it had been sold by Waterhouse & Company to the respondent, it demanded of the latter either the possession of the truck bought by him or payment of such sums as the Millers had agreed to pay, less what they had paid. These demands being refused by the respondent, the bank replevied the truck. It should be stated that nothing whatever was put of record showing or tending to show that the bank was the owner of or interested in the truck purchased by the respondent, or the contract of sale thereof to the Millers. It is conceded that the assignment to the bank was for security purposes only. The trial court held against the bank, and this appeal results.

The case now stands as though Waterhouse & Company were the original vendors, and no further mention need be made of the Vulcan Manufacturing Company.

The argument of the respective parties takes a wide range.  It is contended by the appellant that the assignment of the contract to it not only vested in it all of the previous rights of Waterhouse & Company in the contract itself, but carried with it such title to the truck as that company had reserved by the terms of the contract, and that, since Waterhouse & Company had no interest either in the truck or the contract, it could not give to the respondent any title or any right of possession, because it had none to give.  Or, it is argued, if the bank did not take the actual title to the truck, it did take all the interest which Waterhouse & Company had in the contract, including the right to take possession of the machine from the Millers in the event the latter failed to make the contractual payments; and that, since the Millers did not make such payments, the right of possession of the truck vested in the bank, and that, because thereof, it had a right to maintain this action, which was one for possession.  On the other hand, the respondent contends that the appellant took nothing but the right to receive the payments which the Millers had agreed to make under the contract, and that the title to the truck and the right to its possession, in the event the Millers failed to live up to the contract, were at all times in Waterhouse & Company, and that it therefore had the right to take possession from the Millers and thus give to the respondent—an innocent purchaser—both title and possession.

Since the appellant greatly relies on the case of *State Bank of Black Diamond v. Johnson,* 104 Wash. 550, 177 Pac. 340, 3 A. L. R. 235, we go at once to it.  It is not necessary to here recite the controlling facts of that case.  Unusual as they were, they are completely duplicated here, except as to the parties and except in that case the assignee of the contract was a purchaser,

while here the assignee took for purposes of security only. If the difference noticed does not distinguish this case from that, then, following the rule of that case, the judgment here must be reversed.

We held in that case that the assignee took not only the contract and all of the assignor's interest therein, but also the title to the automobile itself. We also held that the assignor, having no title to the automobile and no right to its possession, had nothing which it could sell to the innocent purchaser, and consequently the latter took nothing by the attempted sale, and that the assignee, being the owner of the title to the automobile, and also being entitled to the possession because the contractual payments had not been made, was entitled to possession.

We are convinced that the mere assignment for security of a conditional sales contract does not vest in the assignee the title to the property covered by the contract, and which title is reserved in the vendor. There is, it seems to us, a clear-cut distinction between a purchaser of such a contract and one who receives it only as security. One who purchases outright places himself in the stead of him from whom he purchases. The money he pays represents the value of the property itself, plus the rights of the vendor in the contract. The assignee, being in the shoes of the vendor, must be considered as having taken the title to the property in order that he may comply with the terms of the contract made between the vendor and vendee. The very transaction itself indicates that it was the intention of the parties to transfer the title to the property covered by the contract. Such is the rule of the case of the *State Bank of Black Diamond v. Johnson,* *supra.* An assignment of such a contract to a purchaser is, in effect, in the nature of a bill of sale cover-

ing the property contracted for. Whether such a transfer of the title to the property, there being of record no bill of sale or other evidence of the transfer to give constructive notice, would be good as against a *bona fide* purchaser of the subject-matter of the contract, we need not here decide.

But one who takes an assignment of the contract only for the purpose of security is in no true sense a purchaser either of the contract or of the property covered by it. He receives only the right to collect and apply to the payment of the debt secured the money which the vendee has obligated himself to pay. When the debt which the assignment is given to secure has been discharged, the interest of the assignee in the contract is also discharged, and he must surrender it to his assignor. The purpose of the assignment having been accomplished, the interest of the assignee in the contract necessarily ceases. The very nature and purpose of the transaction negatives the idea that the assignee receives the actual title. It follows from what we have said that the appellant could not maintain this action on the ground of its ownership of the truck as alleged in its complaint.

But it is argued by the appellant that, since the contract itself provided that Waterhouse & Company should have the right to retake possession of the truck in the event the Millers failed or refused to make the payments, and since this contract was assigned to the appellant, the latter must have taken the right which previously existed in Waterhouse & Company to take possession on default of the Millers. This argument is plausible, but we think it is not sound. The right of possession of the truck belongs to the person holding the reserved title, and the one right is necessarily tied to and follows the other. Because the appellant

took only for the purpose of security, it took neither the title to the truck nor the title to the contract, and, having neither, it could not have either the ownership of the truck or the right to its possession. In other words, the whole transaction amounts to nothing more than an assignment to the appellant of the right to receive and probably enforce the payments which the Millers obligated themselves to make.

But appellant cites the case of *Western Lumber Exchange v. Johnson,* 110 Wash. 200, 188 Pac. 388, as holding directly to the contrary of what we have said. Let us see if it does. That case involved the sale of an automobile under conditional sale contract and the assignment of the contract to the Western Lumber Exchange, which was the plaintiff in the action. Among other things in the opinion, we said:

"It is next contended that the court erred in rendering judgment for respondent as the testimony showed the conditional sale contract was taken as security only. The conditional sale contract reserved the title in the vendor; and the fact that respondent guaranteed the payments neither added to nor detracted from the rights and obligations of appellant under the contract. By the terms of the contract the vendee [appellant] agreed that the vendor had the right to assign the contract; and when the vendor, for a valuable consideration, assigned his right under the contract, that assignee became entitled to all the rights of the former owner. That is according to the terms of the contract, and the only defense here, as already noticed, is one of general denial."

We have re-examined the record of that case with a view of applying its law to the facts of this case. One English sold the automobile to Johnson, the defendant in the case, the sale being by the usual conditional sale contract. English assigned the contract to the Western Lumber Exchange, as a purchaser and not for se-

curity. The latter assigned it to one Winter and guaranteed that Johnson would make the payments as provided in the contract. He failed so to do and the Western Lumber Exchange, because of its guarantee to Winter, was obliged to take back the contract from Winter. It will thus be noticed that the Lumber Exchange was a purchaser outright of the contract and did not take it as security. Such being the situation, it was the owner of the automobile and as such was entitled to possession as against Johnson, the vendee, who was in default.

But appellant argues that an assignment of such a contract is at least in effect a pledge or mortgage of the truck itself. We think what we have already said disposes of this contention. But if the assignment could be construed to be a pledge it would not be good as against the respondent because there was no delivery of the thing pledged, and there can be no valid pledge without delivery. As a mortgage, it could not be good as against an innocent purchaser, because the lien would be a secret one, there being no mortgage executed and none, of course, put of record to furnish either actual or constructive notice. We must, therefore, hold that the appellant had no such interest in the truck or contract as that it could maintain this suit.

The appellant asserts that "these contracts are very widely used in this state and they are almost universally accepted by the banks of the state as security for advances," and that "the greater part of the automobile business of this state is undoubtedly transacted in this manner," and that, "in view of this universal reliance upon the validity of such assignments," we should be slow to make them ineffectual. Our answer is two-fold; first, that we do uphold such assignments, but not to the extent contended for by the appellant;

and second, there are ways provided by law for the handling of this character of business in such a manner that all parties will, in contemplation of law, be protected. Unquestionably, the action of Waterhouse & Company in accepting the return of the truck without the consent of the appellant amounted to a legal fraud against it, because that transaction had the effect of depriving the appellant of its security under the assignment. But the respondent is an innocent purchaser. Whichever way we may decide this case, we must do a financial injury to someone, and that injury should be visited upon the party who had it in his or its power to transact the business in a way that no person need have been hurt. We have said that the appellant, by the assignment of this contract, took the right to receive the moneys which the Millers were obligated to pay. If the appellant desired to protect itself against the default of the Millers, it could have taken and filed the ordinary chattel mortgage from Waterhouse & Company covering the truck; such mortgage, of course, being subject to the rights of the Millers under the conditional sale contract. In this way the appellant would have had perfectly legal security and all the world would have had notice, either actual or constructive, of its interest.

For the reasons given, the judgment is affirmed.

MAIN, C. J., MACKINTOSH, HOLCOMB, and MITCHELL, JJ., concur.