[Civ. No. 2918.   Third Appellate District.—October 14, 1925.]

W. T. KINSEY, Appellant, v. J. F. RYAN, etc., et al., Respondents.

[1] CLAIM AND DELIVERY—VENDOR AND VENDEE—ASSIGNMENTS—TITLE TO AUTOMOBILE—JUDGMENTS.—In an action by a vendee under a conditional contract of sale of an automobile in claim and delivery of said automobile, a judgment that said vendee take nothing based on a finding that a lumber company was the owner of said automobile will be reversed, where a bank, to which the vendor had assigned the conditional contract as collateral security for advances made and to be made to him by said bank, and through which said lumber company was claiming by virtue of an assignment of the bank's interest in said contract and automobile, never acquired the ownership of said automobile.

(1) 35 Cyc., p. 695, n. 7.

Rights as between the assignee of a conditional sale vendor and one who deals with the latter after the return of the property, note, 3 A. L. R. 242.

APPEAL from a judgment of the Superior Court of Sonoma County. Ross Campbell, Judge. Reversed.

The facts are stated in the opinion of the court.

E. J. Dole for Appellant.

E. S. Page for Respondents.

PLUMMER, J.—On the twentieth day of January, 1923, the plaintiff and one J. H. Madison entered into a conditional contract of sale whereby the said J. H. Madison conditionally sold to the plaintiff a certain Nash automobile for the sum of $900, $360 payable in cash, and the remainder thereof as follows: $108 on February 15, 1923; $108 on March 15, 1923; $108 on April 15, 1923; $108 on May 15, 1923, and $108 on June 15, 1923. Possession of the automobile was then and there delivered to the plaintiff. The conditional contract of sale provided, first, that if the monthly payments were not made as provided therein, they should bear interest at the rate of one per cent per month until paid. It was also further conditioned that the purchaser should keep the property insured, and take other precautions for its safety, and keep it within the territorial limits of the state of California. It was then provided that if the purchaser failed to make the payments as stipulated, the party of the first part might, at his option, retake possession of said automobile, including all new parts added thereto by the buyer and that the rights of the purchaser should thereupon terminate, and action might be begun for the collection of the remaining installments set forth in the contract and then remaining unpaid, or might waive the conditions of the contract, consider the sale absolute, and sue for the balance due, or take possession of the automobile, sell the same, apply the proceeds toward the payment of the balance due, and, in case of deficiency, proceed against the buyer for the amount due thereon, or that the seller might avail himself of any and all rights, privileges or elections which are or may be granted to a seller by operation of law. On the twenty-third day of January, 1923, said J. H. Madison for the purpose, as shown by the testimony, of giving collateral security for general advances to be made to him by the Sonoma County National Bank assigned his

interest in said contract to the Sonoma County National Bank by a written assignment in the following words:

"For value received J. H. Madison hereby transfers, assigns and sets over all *its* right, title and interest in and to the within contract and in and to the property therein described and to all of the moneys payable thereunder to Sonoma County National Bank, and hereby guarantees the payment of all moneys due or to become due under the said contract and also the full performance by the second party therein named of all the second party's promises and covenants and it hereby consents that the time of payment of any of the said installments therein provided may. be extended at the request of the second party, notice of which is hereby waived.

"Dated, the 23 day of Jan. 1923.

"J. H. MADISON."

Thereafter and on the thirteenth day of April, 1923, in an action instituted by the Sterling Lumber Company against the said W. T. Kinsey wherein an attachment was levied, the defendant John M. Boyes, as sheriff of the county of Sonoma, levied upon the automobile herein mentioned. Thereupon and on the twentieth day of April, 1923, the seller mentioned in the conditional contract herein referred to, filed his third-party claim as owner of said automobile in the following words and figures, to wit:

"(Title of court and cause.)

"Notice of Claim Under Conditional Sale Contract.

"State of California,

County of Sonoma,—ss.

"J. H. Madison, being first duly sworn, deposes and says:

"That he is the owner of that certain Nash automobile engine number 13856, State license number 121,680 taken under attachment issued in the above entitled cause from the defendant W. T. Kinsey; that said W. T. Kinsey is in possession of said automobile under a conditional sale contract dated Petaluma, California, January 20, 1923 for the total sum or price of $900.00; that there is now due affiant from defendant the installment due on the 15th day of April, 1923, amounting to $108.00, together with interest from the date of the contract at the rate of eight per cent per annum; that there will accrue on the 15th day of May and the 15th day of June, 1923, respectively installments of $108.00 to-

gether with like interest. That affiant hereby demands of the sheriff either the possession of said car or that said sheriff shall pay to affiant the above installments now due and to accrue in full in cash within five days from the receipt of this notice and affidavit.

"This notice and affidavit is given in accordance with Sections 689, 689a and 689b of the Code of Civil Procedure of the State of California and affiant hereby claims and demands all of the right accorded to him under said provisions of the law.

"J. H. MADISON.

"Subscribed and sworn to before me this 18th day of April, 1923.

"(Seal) E. J. DOLE,

"Notary Public in and for the County of Sonoma, State of California.

"(Endorsed) Received in the sheriff's office of Sonoma Co. Cal. Apr. 20, 1923 at 35 min. past 9 o'clock A. M."

Following the filing of this claim a representative of the Sterling Lumber Company went with said Madison and the sheriff to the place of business of the Sonoma County National Bank, where the said representative of the Sterling Lumber Company paid to the Sonoma County National Bank the unpaid portion on said contract, then amounting to the sum of $324, and received from said Sonoma County National Bank said contract with the following indorsements thereon:

"For value received, we hereby transfer, assign, and set over all our right, title and interest in and to the within contract and in and to the property therein described and to all of the moneys payable thereunder to the Sterling Lumber Company.

"THE SONOMA COUNTY NATIONAL BANK.

"By A. P. BEHRENS, Cashier.

"(In pencil)

"W. T. Kinsey made the following payments:

| | |
|---|---|
| February 15, 23 | $108.00 |
| Mar. 15, 23 | 108.00 |
| Sterling Lumber Company paid the balance, April 23–23 | $324.00 |

$540.00"

The sheriff then stored the automobile and retained possession thereof up to the time of the trial of this action.

The Sterling Lumber Company was unsuccessful in its attachment suit, judgment being entered in favor of the said W. T. Kinsey, the defendant in that action and the plaintiff in this. After the rendition of judgment in favor of the defendant in the attachment suit, the plaintiff in this action, demand was made upon the sheriff for the return of the attached automobile. This demand not being complied with by the sheriff, this action was begun for its recovery, or for the value thereof. The complaint is in the usual form of claim and delivery for personal property. The defendants in this action admitting the attachment of the property, set up in their answer the conditional contract of sale; to which we have referred, and, among other things, alleged as follows:

"That on or about the 23rd day of January, 1923, said J. H. Madison assigned, transferred and set over said contract to the Sonoma County National Bank, a corporation.

"That after defendant sheriff had levied on said automobile, to wit, on the 20th day of April, 1923, a third party claim was filed with defendant sheriff claiming title to said automobile under and by virtue of said contract of conditional sale with J. H. Madison and Sonoma County National Bank; that thereupon, said Sterling Lumber Company, in pursuance of law, paid the amount unpaid under said conditional sale contract, and said contract of conditional sale was assigned and transferred by said Sonoma County National Bank to said Sterling Lumber Company; that said Sterling Lumber Company is now the owner and holder thereof."

It is further pleaded by defendants that the said W. T. Kinsey, the plaintiff herein, did not make the three payments provided to be made on the fifteenth day of April, fifteenth day of May and fifteenth day of June, respectively, and that the whole of said sums remained unpaid and that, pursuant to the terms of the contract of conditional sale, the Sterling Lumber Company had declared all rights of said W. T. Kinsey in and to said automobile to be at an end.

There is no testimony in the record showing that such payments have not been made by the plaintiff, nor is there any

testimony in the record showing that the Sterling Lumber Company has exercised any election whatever in the matter of the forfeiture of the plaintiff's ownership or right to the automobile in question, or has taken any proceedings whatever under and by virtue of the terms of the conditional sale contract herein referred to. It may be here stated that the conditional sale contract does not provide by any of its terms that upon failure of the buyer to make payments as therein provided, the buyer's rights in and to the automobile shall *ipso facto* terminate and thereafter be considered as ended. It provides simply, as we have hereinbefore stated, for certain remedies which the seller may take upon his election. The court, in its findings, found that the defendant sheriff is in possession of the automobile in question, that he had refused to deliver the same to the plaintiff, that his withholding thereof is not unlawful, and then the execution of the conditional contract of sale, as we have stated. The court also made the following findings:

"That on or about the 23rd day of January, 1923, said J. H. Madison assigned, transferred and set over said contract to the Sonoma County National Bank, a corporation.

"That after defendant sheriff had levied on said automobile to wit, on the 20th day of April, 1923, a third party claim was filed with defendant sheriff claiming title to said automobile under and by virtue of said contract of conditional sale with J. H. Madison and Sonoma County National Bank; that thereupon, said Sterling Lumber Company paid the amount unpaid under said conditional sale contract, and said contract of conditional sale was assigned and transferred by said Sonoma County National Bank to said Sterling Lumber Company; that said Sterling Lumber Company is now the owner and holder thereof."

It is then further found that the said W. T. Kinsey had not paid the last three payments mentioned in said conditional contract of sale, and that by reason of said default in making said payments the Sterling Lumber Company had declared all rights of said W. T. Kinsey to said automobile to be at an end; that said Sterling Lumber Company was the owner of said automobile and entitled to the possession thereof. Conclusions of law were drawn to the effect that the Sterling Lumber Company was the owner of said automobile and judgment that the plaintiff take nothing by

his action was entered. From this judgment the plaintiff appeals.

It is insisted by the appellant that under the terms of section 689b, Code of Civil Procedure, and as alleged in defendant's answer, when the Sterling Lumber Company, in pursuance of law, paid the amount unpaid on said conditional contract, the absolute and unconditional title to the automobile in question immediately passed to the plaintiff in this action. That section, after setting forth the manner in which property subject to a conditional sale may be attached and requiring the deposit or payment of the unpaid portion of the contract, concludes "then the title shall pass to the buyer and the property may be sold as in this chapter provided free of all lien or claim of the seller," the contention being, that immediately upon the payment of the $324, as hereinabove stated by the Sterling Lumber Company, the absolute title to the automobile under the last clause of said section became vested in the purchaser of the automobile named in said contract, to wit, the plaintiff herein. To support this contention, our attention is expressly called to the case of *Carstenbrook* v. *Wedderien,* 7 Cal. App. 465 [94 Pac. 372], wherein this court was considering sections 2969 and 2970 of the Civil Code, where the procedure is set forth for attaching personal property covered by a chattel mortgage. The mortgagee had been paid the amount of his claim and satisfaction of the mortgage had been entered of record. This court, under such circumstances, held that the action to cancel the satisfaction of the mortgage and subrogate the plaintiff to the rights of the mortgagee could not be had, and in referring to section 2970, Civil Code, held as follows: "It is obvious that said section is intended to furnish the exclusive method for the reimbursement of said creditor as the preceding section prescribes the condition by compliance with which he may, under process, take possession of the property."

[1] No assignment of the chattel mortgage was had in that case, nor was there any attempt made to subrogate the plaintiff to the possession or rights held by the mortgagee. In this particular the facts are dissimilar to those in the case at bar. Here there appears an assignment by the bank to the lumber company. It seems to us evident that if no attachment had been levied the Sterling Lumber Company

might have taken an assignment from the bank of all the
interests it held in and to the conditional contract, and we
do not perceive any valid reason why such assignment
should not be made or taken at any time before the plaintiff
had made final and full payment thereon, but, for the rea-
sons herein stated, we do not need to decide the question
of where the absolute ownership of the automobile vested
upon the performance of the acts which we have narrated.
The stipulated evidence of the seller of the automobile, J. H.
Madison, is to the effect that the conditional contract was
assigned to the bank as collateral security for general ad-
vances made and to be made to him by the bank. The
record also shows that three months after such assignment
to the bank, Madison was the one who filed the third-party
claim setting forth his ownership of the attached automobile.
This affidavit and claim of ownership was acted upon by all
parties. It is thus apparent that the bank never acquired
the ownership of the automobile. This exact question was
before the supreme court of Washington in *Bank of Cali-*
*fornia* v. *Danamiller*, 127. Wash. 255 [36 A. L. R. 573, 215
Pac. 321]. We quote from that case as follows:

"We are convinced that the mere assignment for security
of a conditional sales contract does not vest in the assignee
the title to the property covered by the contract, and which
title is reserved in the vendor. There is, it seems to us, a
clear-cut distinction between a purchaser of such a contract
and one who receives it only as security. One who pur-
chases outright places himself in the stead of him from whom
he purchases. The money he pays represents the value of
the property itself, plus the rights of the vendor in the
contract. The assignee, being in the shoes of the vendor,
must be considered as having taken the title to the prop-
erty in order that he may comply with the terms of the
contract made between the vendor and vendee. The very
transaction itself indicates that it was the intention of the
parties to transfer the title to the property covered by the
contract. Such is the rule of the case of *State Bank of*
*Black Diamond* v. *Johnson*, 104 Wash. 550 [3 A. L. R.
235, 177 Pac. 340]. An assignment of such a contract
to a purchaser is, in effect, in the nature of a bill of
sale covering the property contracted for. Whether such
a transfer of the title to the property, there being of record
no bill of sale or other evidence of the transfer to give

constructive notice, would be good as against a *bona fide* purchaser of the subject-matter of the contract, we need not here decide.

"But one who takes an assignment of the contract only for the purpose of security is in no true sense a purchaser either of the contract or of the property covered by it. He receives only the right to collect and apply to the payment of the debt secured the money which the vendee has obligated himself to pay. When the debt which the assignment is given to secure has been discharged, the interest of the assignee in the contract is also discharged, and he must surrender it to his assignor. The purpose of the assignment having been accomplished, the interest of the assignee in the contract necessarily ceases. The very nature and purpose of the transaction negatives the idea that the assignee receives the actual title. It follows from what we have said that the appellant could not maintain this action on the ground of its ownership of the truck as alleged in the complaint."

No assignment was taken from Madison by the lumber company and all the title which it received was at the utmost only the title held by the bank. What right and title the Sterling Lumber Company acquired under the contract, and what right or title it now possesses, or what claim or lien, if any, it has against the automobile, need not be decided and any statement concerning the same would be *obiter* for the simple reason that the record does not show a word of testimony concerning such claim, nor is the Sterling Lumber Company a party to this action, but the figures show that the bank at the utmost could not have had a claim or lien against the automobile in excess of the sum of $324, the unpaid balance at the time of the attachment and therefore could not have assigned to the Sterling Lumber Company a claim or right or lien against the property, or interest in the contract in excess of that sum.

It follows from what we have said that the judgment of the trial court should be, and the same is hereby reversed, and the cause remanded for a new trial.

Hart, J., and Finch, P. J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on November 13, 1925.