Submitted on briefs November 7, 1928, affirmed January 8, 1929.

# CITIZENS' INVESTMENT CO. *v.* STARR PIANO CO.

(273 Pac. 387.)

For appellant there was a brief over the name of *Mr. W. B. Shively.*

For respondent there was a brief over the names of *Mr. C. C. Hall* and *Mr. E. L. Wilson.*

ROSSMAN, J.—The uncontradicted evidence shows that the plaintiff is engaged in the business of purchasing from retail merchants conditional sales contracts. The defendant is a piano manufacturer. Thompson & Company, until it was adjudged a bankrupt June 27, 1927, was an established firm of piano merchants in Portland. It purchased some of its pianos from the defendant; in rare instances it paid the full purchase price at the time delivery was made, but most of the times the defendant and this firm agreed that the price should be payable in installments and executed a conditional sales agreement which reserved title in the defendant until the entire purchase money was paid. These contracts further stipulated:

"It is agreed that the buyer will not, that he has no right to, and that he will not attempt to assign, pledge, mortgage or otherwise dispose of * * said personal property * * during the existence of this agreement without the written consent of the seller, unless such disposition thereof be in the regular course of business, and under and by virtue of a conditional sales agreement in form similar to this instrument, which instrument shall thereupon be deemed to have been and will thereupon by virtue of the provisions hereof be deemed to be pledged to the seller hereunder as security for the payment of the moneys required to be paid under and by virtue of the provisions hereof, or any other moneys due or owing or unpaid from buyer to seller and which conditional sales contract the buyer agrees to deliver to the seller hereunder. * * And in case such personal property or any part thereof be sold for cash, that portion of the money so received from such sale which equals the balance of the purchase price still unpaid thereon, shall belong to the seller and deemed to be a trust fund in his hands for the use and benefit of the seller until it shall be fully paid in cash for such personal property so sold."

Thompson & Company never delivered to the defendant any of these conditional sales contracts. The defendant was aware of this omission, and upon one occasion when its local manager saw in the office of Thompson a dealer in commercial paper, he requested that Thompson deliver these conditional sales contracts in accordance with their contracts of purchase. The latter replied that they would do so in a few days.

When Thompson & Company received the pianos thus purchased from the defendant it placed them at once in its show-rooms and offered them for sale. Apparently most, if not all, of its customers pur-

chased upon a conditional sales plan, whereby the price was payable in monthly installments, and the title was reserved to the vendor until the full price was discharged. From time to time they offered for sale these conditional sales contracts to the plaintiff. All of these offerings did not arise out of sales of pianos manufactured by the defendant, because Thompson & Company purchased pianos from others besides the defendant. Preceding the adjudication of bankruptcy the plaintiff had purchased from this firm more than two hundred of these contracts. In all of these transactions it was entirely unaware of the fact that the defendant claimed an interest in any of these pianos, and that Thompson & Company had purchased under contracts which reserved title in the vendor. The parties disagree as to whether the transactions between the plaintiff and Thompson & Company amounted to a sale or to a loan by the former to the latter. The defendant contends for the theory of a loan. We have carefully read the evidence and have concluded that there is no substantial evidence which would have warranted the jury to make a finding of a loan. However, due to the disposition which we are about to make of this action, it is immaterial whether the transactions constituted a purchase or a loan, hence we shall not set forth a review of the evidence. The plaintiff paid for each contract it purchased the amount of twenty installment payments, less 16⅔ per cent. When it received the amount of these twenty payments it returned the contract, and thus terminated its connection with the matter. Before purchasing it required Thompson & Company to sign the following statement stamped upon the back of each contract: "For good

and valuable consideration, we hereby sell, assign, transfer and guarantee payment of the within note according to terms thereof, and hereby waive presentation, demand, notice and protest.''

When the defendant sold to Thompson the two pianos which constitute the subject matter of this controversy the latter made no payment at the time of the delivery; the conditional sales contract provided that its payments should begin in thirty days, and that the full purchase price should be discharged in twenty-four equal monthly installments; it contained the provision which we have previously quoted and reserved title in the defendant until the purchase price was fully discharged. Thompson & Company sold one of these pianos to a Mr. Cornish and the other to a Mrs. Lewis; each sale was a conditional one, and each contract set forth the purchase price, the monthly installment payments, reserved title in the vendor until the purchase price was fully paid and contained the stipulations commonly found in such documents, including 6 per cent interest on deferred payments. The plaintiff accepted those contracts unaware of the defendant's interest. For each contract it paid Thompson & Company an amount determined by the method which we previously described. Both Mr. Cornish and Mrs. Lewis defaulted in their monthly installment payments. Following their defaults Thompson & Company repossessed the pianos, as it had contracted with the plaintiff it would do in such an event. Further, pursuant to its agreement with the plaintiff, it endeavored to resell the pianos. About this time Thompson was adjudged a bankrupt, and shortly thereafter the defendant seized these pianos. It asserted claim to them on the ground that since

Thompson had defaulted in his payments, it was entitled to possession under the clause of the conditional sales contract which we have quoted. Thereupon, the plaintiff brought this action.

The defendant, in order to defeat the title which the plaintiff asserts to these pianos, argues that Thompson & Company had no authority to transfer title to its pianos to the plaintiff; further, that while they could rightfully sell the pianos on conditional sales contracts to piano buyers, this did not authorize them to dispose of the contracts in groups of several at a time to the plaintiff.

We believe that the entire controversy can be expeditiously disposed of by determining, first, who owned the commercial paper received by Thompson when he sold a piano, and, second, the nature of the defendant's interest in it after Thompson failed to deliver it to the defendant as he should have done.

1. It is clear to us that the parties contemplated that when Thompson & Company sold a piano and received a conditional sales contract as a consequence, the latter should be considered as owners of this instrument. We believe that this conclusion is warranted by the facts (1) the conditional sales contracts were executed in the name of Thompson & Company and (2) the contract with the defendant recognizes Thompson & Company as owner by providing that these documents shall be considered pledged to the defendant.

2, 3. Next, it is to be observed that the conditional sales contract employed by the defendant in effecting its sales to Thompson & Company fixed the latter's relationship to the commercial paper received by him as a pledgor. It was the duty of this pledgor to deliver the contracts to the defendant, but as long

as that duty remained unperformed Thompson & Company were pledgors in possession. Perhaps it could be said in behalf of the defendant's position that Thompson might be considered as the defendant's agent in possession of the pledged contracts. But, there were no circumstances attached to their possession which would apprise third parties that they held as pledgors and not as owners. We believe that the fact that the plaintiff bought the contracts from a pledgor in possession is sufficient to invest it with title: 21 R. C. L., Pledges, § 13; 31 Cyc., Pledges, pp. 801, 805.

We are especially persuaded to this conclusion by the fact that the defendant invested Thompson & Company with such general authority over its merchandise; that is, the right to hold themselves out as owners, to sell in its own name as owners, to effect conditional sales contracts in the name of Thompson & Company, and to receive payment when a sale was made for cash.

Since the plaintiff dealt with a pledgor in possession and parted with a fair value before it obtained this commercial paper, it is immaterial whether the transaction was a loan to Thompson & Company, accompanied by a lien, or a sale.

4. The words stamped by the plaintiff upon the backs of the contracts to effect a transfer were somewhat inappropriate, but we believe that they were sufficient to pass title to the plaintiff: *State Bank* v. *Johnson,* 104 Wash. 550 (177 Pac. 340, 3 A. L. R. 235); *Bank of California* v. *Danamiller,* 125 Wash. 255 (215 Pac. 321, 36 A. L. R. 753).

5. The language of the instruments, and of the indorsement, as well as parol testimony, which was not contradicted, satisfies us that when Thompson &

Company sold a contract to the plaintiff the transaction amounted to this: If the installment payments covered a period longer than twenty months, the plaintiff acquired a fractional interest in the contract only, while Thompson & Company subordinated its interest to that of the plaintiff. The assignment of the contracts transferred to the plaintiff the vendor's reserved title in the pianos; the above Washington cases so hold.

It follows from the above conclusions that the pianos belonged to the plaintiff when the defendant seized them.

Having come to this conclusion there is no necessity to discuss the effect of the court's erroneous instructions in regard to the defendant's duty to record its conditional bill of sale; nor in regard to defendant's exception concerning an estoppel.

We have examined all the remaining assignments of error carefully. We have concluded that they are without merit.

It follows that the judgment of the Circuit Court should be affirmed.               AFFIRMED.

RAND, J., concurs in result.